was entitled to take under the process issued to him. The question whether the sheriff has taken property that he was not entitled to replevy in behalf of plaintiffs can be more fully and more satisfactorily determined upon the evidence of witnesses upon a trial than upon ex parte affidavits upon such a preliminary motion as this.

The notice of motion seems to indicate only the foregoing ground as the basis upon which the replevin process should be set aside. Upon the hearing, however, two other questions were more or less discussed. It was claimed by defendant that no proper or sufficient order was obtained by plaintiffs, allowing them to commence this suit against the receiver. It appears, however, by the answering affidavits, that upon notice to the attorney general, at a term of court held by the same justice who appointed defendant receiver, an order was obtained allowing plaintiffs to commence this action. The order, however, does not seem to have been entered until two or three days after the action was commenced. I do not regard such facts as furnishing a sufficient basis upon which to set aside the service of the summons and process herein. There does not seem to have been any intentional disregard or contempt of the court or its officers by the plaintiffs. Their order seems to have been granted upon reasonable notice and under proper circumstances. There was some delay in entering the order, but when entered it would, doubtless, for the purposes of this motion, take effect as of the day when it was granted. The granting of this motion, upon this ground, at best, would be more or less discretionary with the court. I do not think, under the circumstances, that the discretion should be exercised against plaintiffs in this case. It was also suggested, rather than very seriously argued, that the sheriff had not made a sufficient levy upon the chattels under the process issued to him. I think, however, upon all of the facts appearing upon the hearing, and especially in view of the receipt given by the defendant to the sheriff by which he takes the custody of the property, and, in substance, recognizes the levy and rights of the sheriff, that this contention is not established. These views lead to denying this motion, with $10 costs.

Motion denied, with $10 costs.

---

(58 App. Div. 61.)

BETTENHAUSER v. TEMPLARS OF LIBERTY OF AMERICA.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. INSURANCE—ASSESSMENTS—NOTICE—MANNER OF SERVING.

Where the laws of a fraternal insurance society made no provision as to the manner in which notices of assessment should be given, but the evidence showed that notice was mailed and received by a member, and that personal written notification that he would be suspended on a certain date if his assessments were not paid had been given, there being no claim that the assessments were paid, a verdict for defendant in an action on the policy was proper.

2. SAME—MAILING.

Where the laws of an insurance society made no provision as to the manner in which notice of assessment should be given, proof that such

notice was mailed would be sufficient to show its receipt by a member on the absence of proof to the contrary.

**8. SAME—PLEADING.**

Where plaintiff, seeking to recover on an insurance policy, alleged full performance by the insured of all the terms and conditions of his certificate of membership, defendant, under a general denial, was entitled to prove nonpayment of assessments by the member, though such fact was not specially pleaded.

Appeal from trial term, New York county.

Action on a policy by Gertrude Bettenhauser against the Templars of Liberty of America. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, Mc-LAUGHLIN, and INGRAHAM, JJ.

Augustus P. Waegner, for appellant.

Edgar Whitlock, for respondent.

McLAUGHLIN, J. On the 7th of September, 1885, John Bettenhauser became a member of the defendant association, a domestic corporation, and on that day it issued to him a certificate, of which the following is a copy:

"Certificate of Membership.

"This certifies that Bro. John Bettenhauser has been duly initiated, and is a member in good standing of Olive Temple No. 14, of Brooklyn, state of New York, and in accordance with and under the provisions of the constitution and by-laws governing this association the sum of one assessment for each member of the endowment fund at the time of his death, not to exceed the sum of one thousand dollars ($1,000), shall be paid to his wife, Gertrude, née Simon, within forty days after the grand recorder shall have received satisfactory evidence of his death and the surrender of this certificate, and with the receipt on the back of this certificate filled out and signed by the person or persons receiving said benefits: provided, that all the requirements of the endowment fund are complied with by the said John Bettenhauser according to the applicant's petition on file, and that he is clear of all indebtedness to this association at the time of his death. In witness whereof this certificate of membership in the endowment fund in the Templars of Liberty of America is signed by the grand templar and grand recorder, this seventh day of September, 1885.

"[L. S.]                    George W. Palmer, Grand Templar.
                           "O. H. Rohde, Grand Recorder."

On the 21st of August, 1895, John Bettenhauser died, and this action was brought by his widow to recover the $1,000 specified in the certificate of membership. The complaint, among other things, alleged "that the said John Bettenhauser, in his lifetime, did comply with all the requirements of the endowment fund of the defendant according to his petition made to the defendant at the time of his application to become a member, and on file with the defendant; and plaintiff alleged, upon information and belief, that the said John Bettenhauser at the time of his death was clear of all indebtedness to the defendant." This was the only allegation of the complaint denied by the defendant, and upon this issue the parties went to trial, and there the plaintiff, after introducing the certificate of membership, rested. From the testimony offered on the part of the defendant—which was not controverted

by the plaintiff—it appeared that the constitution and by-laws of the defendant association made no provision as to the manner in which notices of assessment should be given, but during the time Bettenhauser was a member the uniform custom of the defendant was to send such notices by mail; that the grand recorder of defendant sent packages of postal cards to the recorder of each temple, and he in turn posted them, properly addressed to each member; that John Bettenhauser was familiar with this custom; that after he became a member of the defendant he himself held for a time the office of and acted as financial recorder of a subordinate temple of the defendant, during which time notices of assessment were given by him in this way; that on the 29th of June, 1895, Louis Warmers, as the financial recorder of the subordinate temple of the defendant of which John Bettenhauser was a member, mailed two notices, one directed to John Bettenhauser, and the other to his wife, the plaintiff, at their then residence, in and by which they were notified that two assessments were due, and must be paid within 30 days from the date of the notice, or they would be dropped from the rolls. It also appeared that, in addition to the notice given by mail, Bettenhauser was personally advised by Warmers, both orally and in writing, that, unless he paid his assessment, he would be dropped. Warmers testified that intermediate the mailing of the notices above referred to and the 7th of August, 1895,—the time when Bettenhauser was dropped,—Bettenhauser called at his residence, and told him he knew that he was indebted to the defendant, and on August 7, 1895, Warmers called at Bettenhauser's residence, and told him he had better attend a meeting of the defendant to be held that night, and, if he did not, he would be dropped, to which Bettenhauser replied that he would attend, but did not do so; that prior to the time the meeting was held Warmers sent him the following letter, which was delivered to him personally:

"To-night is meeting of H. V. Thompson, 25. Now, if you do not want to be dropped from the roll to-night, you will please pay the arrears, or come personally to the meeting. I had your time extended several times, but can do it no longer; so, if you do not come up and pay all arrears for you and your wife, I must get you both dropped,—which case I do not like to do."

Immediately prior to the meeting, Warmers sent his son to see if Bettenhauser would attend, and the son testified that his conversation with Bettenhauser was had in the presence of the latter's wife, who told him "to go up and show himself, whether he would be dropped or not." She was present at the trial, but did not contradict this testimony in any way. Bettenhauser did not attend the meeting, and, having failed to pay the assessment within the time specified, notice of which had been given 39 days before, he was dropped on the 7th of August, 1895, and thereupon ceased to be a member of the association. At the close of the trial each of the parties moved for judgment, which was denied, the court saying it would submit to the jury one question, viz. the credibility of the defendant's witnesses, with instructions, if they believed that the witnesses told the truth, that then their verdict would be for defendant. The jury rendered a verdict of "No cause of action,"

..and from the judgment entered thereon the plaintiff has appealed.

We think the judgment is right, and should be affirmed. The certificate of membership issued to John Bettenhauser entitled the plaintiff, upon the death of her husband, to receive from the defendant association not to exceed $1,000, provided that all the requirements of the endowment fund had been complied with by him, and he was not indebted to the association at the time of his death; but by express provision of the certificate she was not entitled to recover anything unless her husband at the time of his death was "clear of all indebtedness to the association," and this fact the plaintiff was just as much bound to prove, before a recovery could be had, as that the certificate was issued. It seems that her attorney recognized the force of this provision of the certificate by appropriate allegations in the complaint. The allegation is there made that "John Bettenhauser, in his lifetime, did comply with all the requirements of the endowment fund of the defendant, and that he was at the time of his death clear of all indebtedness to the defendant." But it is urged by the appellant's attorney that, having established that John Bettenhauser was admitted to membership in the defendant association, the presumption prevailed, in the absence of proof to the contrary, that he did comply with the terms of the certificate, and remained a member in good standing until his death, and the burden of establishing such facts was upon the defendant. From what took place upon the trial it seems that the defendant acquiesced in this contention, inasmuch as it assumed the burden of proving that Bettenhauser did not pay his assessment, and was dropped; and we are of the opinion that it conclusively established such fact. It certainly produced evidence which justified the jury in so finding. The constitution and by-laws, it will be remembered, made no provision as to the manner in which notices of assessment should be given, but the uniform custom during the time John Bettenhauser was a member—which custom was well known to him—was to send such notices by mail; and we think, as was held in Merriman v. Association, 138 N. Y. 116, 33 N. E. 738, it is not an unreasonable rule to hold that such notices, under the facts here presented, could legally be given by mail. In that case the court said:

"There is no provision in the policy that a policy holder may be notified of an assessment by mail, but it is a reasonable rule to apply to the situation that such notices may be given by mail. If the service of the notice be questioned in any case, it would be sufficient for the company to show that it had mailed the notice, and, in the absence of countervailing proof, it would be proof that the notice reached the policy holder to whom it was addressed."

Here there was some evidence that the notice was actually received, because, after it was sent, Bettenhauser admitted to Warmers that he knew he was indebted to the association. Not only this, but Warmers told him he must personally attend the meeting, or he would be dropped for nonpayment of dues; and also wrote him, and the letter was personally delivered to him, urging him to attend the meeting, and stating that, if he did not, and pay up his dues, he would be dropped. There was an abundance of evi

dence to establish the fact that Bettenhauser had notice of the assessment, and no pretense or claim is made that he ever paid it.

Finally, it is urged that the court erred in allowing the defendant to prove the nonpayment of the assessments, inasmuch as such. fact was not pleaded in the answer. The plaintiff alleged full performance by John Bettenhauser of the terms and conditions of the certificate of membership, which entitled her to the amount sought to be recovered. The defendant denied performance, and under its. denial it could show every fact which would establish nonperformance by Bettenhauser. Under a general denial a defendant is entitled to offer evidence of any facts which will tend to controvert what the plaintiff is bound, in the first instance, to prove, in order to establish his cause of action. Griffin v. Railroad Co., 101 N. Y. 348, 4 N. E. 740; Milbank v. Jones, 141 N. Y. 340, 36 N. E. 388.

The judgment and order appealed from must be affirmed, with. costs. All concur.